UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELODY ROBBINS,

                              Plaintiff,

                                                                                                                     **DECISION AND ORDER**

                                                                                                                    02-CV-6484L

                          v.

JO ANNE B. BARNHART,

                              Defendant.
_____

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff Melody Robbins is not disabled under the Social Security Act, and therefore, is not entitled to Social Security Disability Insurance ("SSDI") benefits.

      Both the Commissioner and plaintiff have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons discussed below, the Commissioner's motion is denied, plaintiff's motion is granted, and the case is remanded to the Commissioner for the immediate calculation and payment of benefits.

## PROCEDURAL BACKGROUND

      Plaintiff was born on October 9, 1961. (T. 254). She has a high school education and has worked as a factory laborer and as a certified nurse's aide. (T. 155).

Plaintiff applied for SSDI benefits on May 19, 1997, alleging that she had been disabled since December 13, 1996 due to fibromyalgia. (T. 89, 97). After a hearing before an administrative law judge ("ALJ"), the ALJ issued a decision on March 19, 1998, finding that plaintiff was not disabled and denying her application. (T. 218-23).

Plaintiff appealed the ALJ's decision. While her appeal was pending, plaintiff filed a second application for benefits on December 31, 1998. (T. 257).

On April 30, 1999, the Appeals Council issued a decision remanding for further proceedings before the ALJ. Specifically, the Appeals Council directed the ALJ to request an updated report from plaintiff's treating physician, Eleanor H. DeWitt, M.D., to receive evidence from a vocational expert ("VE") if warranted by the updated record, and to give further consideration to plaintiff's subjective complaints. (T. 226).

On March 29, 2000, the ALJ issued a decision on both of plaintiff's pending applications, and again found that plaintiff was not disabled. (T. 13-19). The ALJ's decision became the final decision of the Commissioner on September 6, 2002, when the Appeals Council denied plaintiff's request for review. (T. 7-8). This action followed.

**DISCUSSION**

**I. Definition of Disability**

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ... ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy ... ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B). To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

> The Second Circuit has described the five-step process as follows:
>
> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II. The ALJ's Decision[1]

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged in substantial activity since her alleged onset date. At step two, the ALJ found that plaintiff had an impairment that was severe within the meaning of the regulations. At step three, the ALJ concluded that plaintiff's impairment did not meet or equal any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next determined that plaintiff retained the residual functional capacity ("RFC") to "sustain sedentary work activity with the freedom to change position frequently and not engage in repetitious arm activity." (T. 17). The ALJ found that plaintiff was unable to perform any of her

---

[1] Unless otherwise noted, all references to the ALJ's decision are to the ALJ's March 29, 2000 decision.

- 3 -

past relevant work, but, based in part on the VE's testimony, the ALJ also found that plaintiff "could perform work as an information clerk or surveillance system monitor," and that a significant number of such jobs existed in the national economy. *Id.* The ALJ therefore concluded that plaintiff was not under a "disability" as defined by the Social Security Act. *Id.*

### III. Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner. *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold

a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'") (quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled. Plaintiff contends that the ALJ's finding that plaintiff can perform other work is not supported by substantial evidence, and that the ALJ failed to properly assess plaintiff's RFC.

**IV. Plaintiff's Residual Functional Capacity**

As stated, the ALJ found that plaintiff retained the RFC "to sustain sedentary work activity with the freedom to change position frequently and not engage in repetitious arm activity," and that plaintiff "could perform work as an information clerk or surveillance system monitor ... ." (T. 17). The ALJ stated that he reached that conclusion after "[g]iving the most weight to Dr. DeWitt's July 1997 assessment ... ." *Id.*

The ALJ's reference to Dr. DeWitt's July 1997 assessment relates to the Appeals Council's directions to the ALJ when it remanded plaintiff's case in April 1999. The Appeals Council noted that Dr. DeWitt had stated in July 1997 that plaintiff was capable of what amounts to sedentary work, as long as plaintiff could change position while sitting. In January 1998, however, Dr. DeWitt completed another assessment at the request of plaintiff's attorney, in which she stated that plaintiff could lift and carry less than 10 pounds, and could sit, stand, and/or walk no more than four hours a day. (T. 225). Those restrictions were more stringent than those expressed in Dr. DeWitt's July 1997 assessment.[2] The Appeals Council directed the ALJ to "request an updated report from Dr.

---

[2]For example, in July 1997, Dr. DeWitt stated that plaintiff could stand or walk up to eight hours per day, and sit up to six hours per day. (T. 198) Her assessment of plaintiff's ability to lift and carry went from 10 pounds in July 1997 to less than 10 pounds in January 1998. (T. 213).

- 5 -

DeWitt," and to ask Dr. DeWitt to "clarify[] her earlier assessments as to what the claimant can still do despite her alleged impairments."  (T. 226).

On remand, the ALJ requested and received a third RFC assessment from Dr. DeWitt, which essentially tracked her January 1998 assessment, except that Dr. DeWitt added that plaintiff needed to change position frequently.  (T. 14).  Dr. DeWitt also stated in a letter that her January 1998 assessment was "somewhat more stringent" than her July 1997 assessment primarily based on plaintiff's "failure to improve ... ."  (T. 352).  Dr. DeWitt stated, "Initially I was more hopeful that [plaintiff] might regain function and to gradually develop some improvements in endurance ... but I am convinced that she is at a steady state and likely to remain so indefinitely."  She added, "I do feel that currently and in the future [plaintiff] will have significant restrictions as outlined in the report of 1/7/98 nor do I have any particular anticipation that this will change at any time in the future."  *Id.*

In choosing to assign more weight to Dr. DeWitt's July 1997 assessment, the ALJ opined that "[t]here is no clinical or scientific justification for imposing more stringent restrictions because a patient's subjective complaints remained the same and failed to improve."  (T. 16).  He also indicated that he believed that Dr. DeWitt may have been biased because she wanted to help plaintiff obtain benefits:  "A well-meaning physician acts in her patient's best interests and the desire to help can very well extend to the conscious or unconscious slanting of reports."  *Id.*

In my view, the ALJ erred in rejecting Dr. DeWitt's conclusions in her January 1998 assessment (which she reaffirmed in her third assessment following the remand from the Appeals Council).  In particular, the ALJ's intimation that Dr. DeWitt was biased is not supported by any evidence in the record.

It has long been recognized that the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence.  *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  In determining what

weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §§ 404.1527(d); 416.927(d).

When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand") (internal quotations omitted). Furthermore, in analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

There is some authority, particularly from the Seventh Circuit, that an ALJ, in determining the weight to be given to a treating physician's opinion, may take into account that "a claimant's treating physician may be biased in favor of the claimant." *Smith v. Apfel*, 231 F.3d 433, 442 (7th Cir. 2000); *see also Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999); *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992). It is not clear whether the Second Circuit shares that view, but even the Seventh Circuit has clarified that "there is no presumption of bias in a treating physician's disability opinion." *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993); *see also Micus*, 979 F.2d at 609 ("The ability to consider bias ... is not synonymous with the ability to blithely reject a treating physician's opinion or to discount that physician's opportunity to have observed the claimant over a long period of time"). Other courts of appeals have taken a stricter approach, under which no bias should be inferred absent *actual evidence* of bias. *See, e.g., Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (in the absence of "evidence of actual improprieties," an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits") (quoting *Ratto v.*

*Secretary*, 839 F.Supp. 1415, 1426 (D.Or. 1993)); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("Nor is the ALJ's assertion that a family doctor 'naturally advocates his patient's cause' any sort of good cause to reject the opinions of [plaintiff's treating physician]. Rather, it is a conclusory statement that contradicts our established legal rule, without suggesting some exceptional basis in the facts of this case").

In the case at bar, the ALJ attributed the change in Dr. DeWitt's assessment of plaintiff's RFC to a "desire to help" plaintiff by "slanting" her reports toward a finding of disability. The only basis for the ALJ's conclusion in that regard, however, was that plaintiff's condition had not worsened between July 1997 and January 1998, and that the only "change in circumstances" during that time was that plaintiff had filed a request for a hearing. (T. 16). Apparently the ALJ inferred from this that only bias, either conscious or unconscious, could explain Dr. DeWitt's revision of her opinion.

The ALJ's logic, then, was that if plaintiff was capable of performing sedentary work in July 1997, and her condition had not worsened as of January 1998, then there was no valid basis for revising Dr. DeWitt's assessment of her RFC. A careful reading of Dr. DeWitt's January 21, 2000 letter, however, shows that she did not simply take the same set of facts as in July 1997 but reach a different conclusion. Rather, Dr. DeWitt explained, her prior RFC assessment had been based on her belief that plaintiff's condition might improve, but her optimism in that regard had since proved unfounded. The ALJ appears to have either overlooked, ignored, or implicitly rejected this explanation for Dr. DeWitt's conclusions.

It also appears that the ALJ may have discounted Dr. DeWitt's opinion in part because of the lack of objective medical evidence to support it. The ALJ stated that "[t]he variations in Dr. DeWitt's multiple opinions are explained by her letter of January 21, 2000, but nothing explains away the fact that little, if any, clinical evidence can positively diagnose myofascial pain/fibromyalgia or precisely measure the limitations it might impose." (T. 16). It is not entirely clear what point the ALJ was trying to make, but since he said this in the context of explaining why

he assigned less weight to Dr. DeWitt's January 1998 assessment than to her July 1997 assessment, he seems to have believed that the lack of clinical evidence somehow provided an additional reason to discount Dr. DeWitt's January 1998 assessment.

The ALJ was certainly correct in stating that fibromyalgia is a condition that eludes exact or certain diagnosis through clear-cut, objective clinical evidence. Indeed, "a growing number of courts, including [the Second Circuit], have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)).

In proceeding to give little weight to Dr. DeWitt's January 1998 assessment, though, it appears that the ALJ cited this correct principle to draw an incorrect conclusion. Precisely because the presence or extent of fibromyalgia cannot easily be established through clinical evidence, it is error for an ALJ to "require[] 'objective' evidence for a disease that eludes such measurement." *Id.*; *accord Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Likewise, an ALJ cannot discount a treating physician's diagnosis of fibromyalgia, or the physician's opinions concerning the severity of a fibromyalgic patient's condition, simply because of the lack of objective evidence to support those opinions. *See Willoughby v. Commissioner of Social Security*, 332 F.Supp.2d 542, 547 (W.D.N.Y. 2004). In fact, "a treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent ... ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

At first glance, it might appear that the ALJ's rejection of Dr. DeWitt's January 1998 assessment was not crucial to his decision; he went on to say that "even assuming that there was sound reason to set the claimant's limitations at the levels reflected in the January 1998 and August 1999 reports, those limitations do not rule out the majority of sedentary work activities" and that "[t]here are still sedentary jobs a person with those limitations can perform, according to the

vocational expert testimony ... ." (T. 16). That conclusion is not supported by the evidence, however.

When the ALJ propounded a hypothetical to the VE that was consistent with Dr. DeWitt's January 1998 assessment concerning plaintiff's ability to stand, walk, and sit for prolonged periods, and her ability to lift, the VE testified that "there wouldn't be any positions." (T. 59). Clearly, then, the ALJ's improper rejection of Dr. DeWitt's January 1998 RFC assessment was critical to his ultimate conclusion that there were sedentary jobs available that plaintiff could perform.

To the extent that the VE testified that there *were* jobs that plaintiff could perform, that testimony was based on hypothetical questions that did not match plaintiff's limitations as set forth by Dr. DeWitt. "A hypothetical question that does not reflect the full extent of a claimant's limitations is not a sound basis for vocational expert testimony." *Gravel v. Barnhart*, 360 F.Supp.2d 442, 453 n. 24 (N.D.N.Y. 2005) (citing *De Leon v. Secretary of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984)).

The VE's testimony that there were jobs available that plaintiff could perform was given in response to three hypotheticals posed by the ALJ. In the first of these, the ALJ posited an individual who could "occasionally lift 20 to 25 pounds [and] frequently lift 10 pounds or more ... ." (T. 56). Even in Dr. DeWitt's July 1997 RFC assessment, however, she opined that plaintiff could only occasionally lift up to 10 pounds a day. (T. 198). The ALJ himself ultimately found that plaintiff could "lift and carry up to 10 pounds," not 20 or 25. (T. 18).

In both that and his next hypothetical (which was essentially the same as the first except that it limited plaintiff's lifting ability to 10 pounds), the ALJ made no mention of any limitation on arm movement. (T. 56-58). Even in his own findings, however, the ALJ concluded that plaintiff "must not do repetitious activity with the arms." (T. 18). The ALJ's third hypothetical assumed an individual who could "stand or walk up to 8 hours per day, ... [a]nd no repetitive or vigorous activity with [her] right upper extremity." (T. 58). The ALJ later found, though, that plaintiff could only

"stand or walk for two hours a day," and that she "must not do repetitious activity with the *arms*," *i.e.*, with either her right or left arm. (T. 18) (emphasis added).

Thus, the ALJ's statement that even if Dr. DeWitt's January 1998 RFC assessment were accurate, "[t]here are still sedentary jobs a person with those limitations can perform, according to the vocational expert testimony," was erroneous, since it was based on hypotheticals that did not accurately reflect plaintiff's limitations as set forth in that assessment. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991); *accord Morse v. Shalala*, 16 F.3d. 865, 874 (8th Cir. 1994). It is well settled, therefore, that for an ALJ to rely on a vocational expert's opinion given in response to a hypothetical question, that question "must fully set forth a claimant's impairments." *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992)); *see also Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006) (describing it as "critical for ALJs to pose thorough and complete hypothetical questions to vocational experts"); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record").

Aside from his unfounded suggestion of bias, the ALJ gave no other legitimate reasons for not accepting Dr. DeWitt's January 1998 RFC assessment. He stated that Dr. DeWitt's July 1997 assessment was "consistent with the opinions of Dr. Birdee and Dr. Sirotenko and not inconsistent with the review physicians' findings" (T. 17), but Dr. Birdee (plaintiff's prior treating physician) expressed no opinion about plaintiff's RFC, other than to note in his July 1997 report that plaintiff had been "unable to work since 12-13-96." (T. 179). Dr. Sirotenko, a consultative examining physician, did opine that plaintiff "would benefit from positions of a mild exertional level or sedentary level with the frequent opportunity to change positions throughout the day," (T. 318), but that opinion was not enough of a basis for the ALJ to reject Dr. DeWitt's January 1998 assessment. *See Willoughby*, 332 F.Supp.2d at 547-48 (ALJ's reliance on single statement from a one-time

examining physician as being sufficient contradictory medical evidence to warrant rejection of treating physician's opinion was error). In addition, the ALJ did not even mention the findings of Steven Lasser, M.D., plaintiff's treating orthopedic surgeon, who had found plaintiff to be totally disabled in 1997. (T. 190-91).[3]

**V. Remand Solely for Calculation of Benefits**

Under 42 U.S.C. § 405(g), the court has the authority to affirm, reverse, or modify a final decision of the Commissioner, with or without remand. *See Butts*, 388 F.3d at 385. "Where there are gaps in the administrative record," a remand for further development of the evidence is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) (citation omitted). Reversal and entry of judgment for the claimant is appropriate, however, "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Rosa*, 168 F.3d at 83 (remand solely for calculation of benefits is appropriate where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision").

I believe that remand for calculation of benefits is the better course here. The problem is not that there are gaps in the record, or insufficiently developed evidence, but that the ALJ erroneously rejected the January 1998 RFC assessment by Dr. DeWitt, plaintiff's treating physician. That

---

[3]It is unclear how the assessments of the review physicians (who opined that plaintiff was capable of a medium level of work) figured in the ALJ's analysis. At one point, the ALJ stated that "[i]f ... Dr. DeWitt's opinions are to be given any weight at all [which they apparently were, at least those contained in her July 1997 assessment], the review physician's opinions must be discounted." (T. 16). The ALJ seemingly contradicted himself, though, by stating that Dr. DeWitt's July 1997 assessment was "not inconsistent with the review physicians' findings ... ." (T. 17). That statement is manifestly incorrect, since Dr. DeWitt stated in July 1997 that plaintiff could lift 10 pounds (T. 198), whereas the review physicians opined that she could lift 20 and 50 pounds (T. 200, 343).
    Regardless of the weight, if any, that the ALJ gave to the review physicians' opinions, I find that those opinions (which, as the ALJ noted, have the "disadvantage of having been made by assessment of the written record rather than from personal examination of the [plaintiff] or familiarity with her over time," (T. 16), do not constitute substantial evidence supporting the Commissioner's decision.

assessment, combined with the VE's testimony, indicates that plaintiff was totally disabled after December 13, 1996, and the Commissioner–who has had two opportunities to apply the correct legal standards in this case–failed to meet her burden of proving otherwise. A remand for further proceedings before the ALJ would serve no useful purpose under these circumstances. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) (remanding for the sole purpose of calculating an award of benefits where Commissioner failed to prove that plaintiff could perform other work and application had been pending more than six years); *Colegrove v. Commissioner*, 399 F.Supp.2d 185, 198 (W.D.N.Y. 2005) (remanding for calculation of benefits where medical evidence established that plaintiff was incapable of performing any work); *Huhta v. Barnhart*, 328 F.Supp.2d 377, 387 (W.D.N.Y. 2004) (remanding for calculation of benefits where ALJ's error was in interpreting and weighing the treating physician's opinions, not in failing to develop a more complete record).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. # 13) is granted and the Commissioner's motion (Dkt. # 9) is denied. The case is remanded solely for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 30, 2006.